JAMES T. HENDERSON vs. WILLIAM JASON AND OTHERS.
June 1851.

On a petition for freedom it was proved that *Rachael*, the mother of the petitioners, was permitted by her mistress in the spring of 1831, to go and live with *Aaron* her reputed husband, under an agreement between the mistress and *Aaron*, that he should have *Rachael* free forever thereafter, upon condition that he would raise and support for her mistress two of *Rachael's* children then born. At that time *Rachael* was thirty-five years of age, and able to work and gain a sufficient livelihood and maintenance, and has ever since up to the trial of the case in April 1851, gone at large and acted as a free woman, and was still at large and so acting, never having been molested by her mistress, who died 1846, (and who during her life knew of and assented to *Rachael's* so going at large and acting as free,) nor by her representatives since her death. The petitioners were born whilst *Rachael* was so going at large, and filed their petition for freedom in March 1849. HELD:

1st. That it is competent for the jury to presume from these facts that her mistress legally manumitted *Rachael* before the birth of the petitioners, and that it was not necessary to prove that *Rachael's* mistress manumitted them or either of them, by a deed executed according to the act of 1796, ch. 67, by the actual production of such deed

2nd. That the jury from these facts ought to presume that *Rachael* was legally manumitted at the time she was first suffered to go at large, and that her children born while she was so going at large are entitled to their freedom.

APPEAL from *Anne Arundel* county court.

The appellees, *William*, *Reuben*, *Asbury*, and *Louisa Jason*, by *Aaron Jason* their father and next friend, on the 12th of March 1849, filed their petition for freedom in *Howard District* court, alleging that they were entitled to their freedom, but were unjustly detained in servitude by *James T. Henderson* of said district, the appellant, who answered the petition denying the right of the petitioners to their freedom, &c. The cause was then, upon suggestion of the petitioners, removed to *Anne Arundel* county court for trial, where it was tried at April term 1851.

1ST. EXCEPTION. The petitioners proved by *Alfred Warfield*, that the petitioner *William* is now nineteen, *Reuben* thirteen or fourteen, *Asbury* fifteen, and *Louisa* about seventeen years of age. That they are all healthy, and witness has known them from their youth. Their reputed father is *Aaron Jason*, with whom they had lived from their birth until the defendant took them. Their mother was *Rachael*, who up to 1830 was the slave of *Mrs. Francis Warfield*. *Mrs. W.* died in 1844 or 1845. *Rachael* went to live with *Aaron* in 1830, by permission of *Mrs. W.* and under an agreement between *Mrs. W.* and *Aaron*. *Mrs. W.* told witness at different times, say half dozen times during her life, that *Rachael* was free. That *Mrs. W.* knew that *Rachael* was living with *Aaron*, who lived within a few miles of *Mrs. W's* residence, acting as a free man and was always so considered by witness.

*Gustavus Warfield*, another witness, proved that he always regarded *Aaron* as free, has attended him and the petitioners, his children, as a physician, and charged *Aaron* therefor, who

paid him; that *Aaron* sometimes put out the petitioners for their victuals and clothes, before they were taken by defendant; that *Rachael* was living with *Aaron* as his wife, and in his house in April 1831. *Charles D. Warfield* proved, that his father owned *Aaron*, and that he was too old to set free when witness' father died, being over forty-five years. That witness in 1829 or 1830 let him go free for $100, of which *Aaron* paid $90, and witness gave up the rest; witness was the administrator of his father and as such accounted for the $100 which *Aaron* agreed to give him; he did not know when *Rachael* went to live with *Aaron*, but thinks in 1832 or 1833; *Aaron* told witness that he had paid a consideration for *Rachael*, but witness never knew him to detain her as a slave.

The defendant then called up the first witness, *Alfred Warfield*, and asked him what was the contract between *Mrs. W.* and *Rachael* or *Aaron?* He stated that the agreement was that in consideration that he, *Aaron*, should support and bring up two of *Rachael's* children then *in esse*, *Arch* and *Sam*, she, *Rachael*, was to be free. Defendant further asked him whether he was examined as a witness in the trial of an action of *trover*, brought by *Aaron* against the present defendant, in which *Aaron* demanded the petitioners as his slaves, and whether on that occasion he did not state that *Rachael* was sold by *Mrs. W.* to *Aaron* as his slave? He answered that he did not so state. The defendant then proved by *Hobbs* and *Iglehart*, that in said trial said *Warfield* had stated that *Aaron* purchased *Rachael*. The defendant then offered in evidence the record of proceedings in said action of *trover*, from which it appears that a verdict was rendered for the plaintiff therein, but was set aside and a new trial ordered. The defendant stated that he offered such record in evidence for the purpose of showing that upon the evidence in that action, and after the testimony of said *Alfred Warfield* had been given to the jury in that case as above stated by *Hobbs* and *Iglehart*, a verdict was rendered in favor of *Aaron*, as the owner of the petitioners, so as thereby to sustain the testimony of said *Hobbs* and *Iglehart*, and to show that *Alfred Warfield* is now in error when he states that

*Rachael* was to go free. The petitioners objected to the admissibility of such record, for that purpose, and the court (WILKINSON and BREWER, A. J.,) sustained the objection, and refused to permit said evidence to go to the jury. The defendant excepted.

2ND. EXCEPTION. The defendant then proved by *Talbot G. Shipley*, that witness was called upon by *Eli G. Warfield*, the agent of *Mrs. W.* his mother, to witness an agreement or understanding he was going to make as such agent with *Aaron.* He, *Eli*, stated that he was going to let *Aaron* have his wife *Rachael* free, and that the agreement or understanding was that *Aaron* should support the two children of *Rachael*, then *in esse*, for a certain time, which witness does not recollect. *Eli* stated that *Aaron* was to have *Rachael* free. Witness then asked, if for a term of years or for life? *Eli* said forever :—that *Aaron* was to have full possession of his wife, from the time of the agreement. The same witness proved that *Sam*, one of *Rachael's* children, staid with *Aaron* about six months or a year, and was taken away by *Eli* for his mother, *Mrs. W.*, and that *Arch*, the other child, staid longer; but witness did not know how long. The petitioners then proved that *Arch* staid five or six years, and then was taken away by *Eli* for his mother. They also proved that when *Sam* and *Arch* left *Aaron*, they were able to work, and that at the time *Rachael* went to live with *Aaron* she was under forty-five years of age, and able by her labor to gain a competent livelihood.

The defendant then proved that the petitioners, except *Reuben*, were born before *Arch* left his father as stated. He also proved by *Hobbs* that in 1846, after the death of *Mrs. W.*, witness at the instance of the defendant appraised the petitioners as part of the estate of *Mrs. W.* The petitioners then asked two instructions to the jury:

1st. That from the evidence in the cause it is competent for the jury to presume that *Mrs. W.* was the former owner of *Rachael*, the mother of the petitioners, and that *Mrs. W.* in her life time legally manumitted the said *Rachael* before

the birth of the petitioners, and that it is not necessary to entitle the petitioners to a verdict, that they prove that *Mrs. W.* manumitted them or either of them by a deed executed, acknowledged and recorded, agreeably to the act of 1796, ch. 67, by the production of such deed.

2nd. That if the jury find from the evidence that *Rachael* was set at large and suffered to go to the house of her husband *Aaron*, and live with him in the spring of the year 1831, by her mistress, *Mrs. W.*, under an agreement or understanding between her and *Aaron*, that he should have his said wife free for all time, from the time of said agreement or understanding, and that with the knowledge and consent of said *Mrs. W.* said *Rachael* from the time aforesaid, has lived with her husband, and has gone at large and acted as a free woman for the space of twenty years next before the present time, and that she has not at any time been molested by the said *Mrs. W.* during her life, nor by her administrator since her death, and that she is still at large acting as a free woman, and that at the time said *Rachael* was first set at large by said *Mrs. W.* she was of the age of thirty-five years and able to work and gain a sufficient livelihood and maintenance by her labor, then the jury ought to presume that said *Rachael* was legally manumitted at the time she was first suffered to go at large by her mistress as aforesaid; and if they further find that the petitioners are the children of *Rachael*, born while she was so going at large and acting as a free woman with the consent of the said *Mrs. W.* as aforesaid, then their verdict ought to be for the petitioners.

The court granted these prayers and the defendant excepted.

3d Exception. The defendant then asked the following instructions:

1st. If the jury find that the petitioners are the children of *Rachael*, and that *Rachael*, up to the spring of 1831, was held by *Mrs. W.* as her slave, and that said *Mrs. W.* died in 1846, without having manumitted *Rachael* by deed or will, executed and recorded according to law, and without having made any sale or disposition of said *Rachael*, then the petitioners are not

entitled to their freedom, even if the jury find that *Rachael*, in the spring of 1831, with consent of *Mrs. W.*, went to live with *Aaron* as his reputed wife, and continued to live with him up to the death of *Mrs. W.*

2nd. If the jury find, that there was some parol understanding between *Mrs. W.* and *Aaron*, as to the terms on which *Rachael* should go to live with him, such understanding cannot avail to entitle the petitioners to their freedom, if they believe that *Aaron* at that time was a slave.

3d. If *Rachael* was not legally manumitted, according to the act of 1796, ch. 67, the jury must find for defendant, though they may also find that *Mrs. W.* let *Rachael* go at large in 1830, as a free woman, and that she so continued until about the year 1846 or 1847, and though they further find that *Mrs. W.* received a consideration therefor.

4th. If *Rachael* was not legally manumitted, according to the act of 1796, ch. 67, they must find for defendant, though they may believe that *Rachael* went at large from the year 1830 to 1846, with the knowledge of *Mrs. W.*, under an agreement with *Rachael* or *Aaron*, or by some one for them or either of them.

5th. If *Mrs. W.* agreed, verbally, with *Aaron*, in 1830, that *Rachael* and her after born children, the petitioners, should be free, for the consideration that *Aaron* should support two of his children then born, and if *Aaron* did not support said children, according to said agreement, then the jury cannot presume any valid deed of manumission of *Rachael* or of petitioners, and they must find for defendant.

6th. If *Rachael* lived with *Aaron*, and he was a slave, it is not such evidence of her going at large as will authorise the jury to presume a deed of manumission.

7th. Under such verbal agreement as is stated in the 4th prayer, the jury cannot presume the freedom of *Rachael* before the end of the time during which such agreement was to be executed, and therefore they ought to find for defendant as to all of the petitioners born before that time.

8th. If, under petitioners' first prayer, the jury presume a

valid deed of manumission of *Rachael*, they cannot presume any such manumission of petitioners, unless they presume that deed to have been executed before the birth of the petitioners.

9th. If *Rachael* was the slave of *Mrs. W.* up to the spring of 1831, and no deed of manumission was executed at any time by *Mrs. W.* to *Rachael*, and *Rachael*, with consent of *Mrs. W.*, went, in the spring of 1831, to live with *Aaron*, a negro slave, and lived with him until the death of *Mrs. W.*, they must find for defendants, though they may believe a verbal contract was made by *Mrs. W.* with *Aaron*, in relation thereto.

10th. If the jury believe as stated in the 6th prayer, then they ought not to presume a deed of manumission, though they may believe there was a verbal contract between *Mrs. W.* and *Aaron* that *Rachael* should go free.

11th If *Rachael* was the slave of *Mrs. W.* until the spring of 1831, and was then permitted by *Mrs. W.* to go and live with *Aaron*, by virtue of an agreement with *Mrs. W.* and *Aaron*, or if *Mrs. W.* permitted *Rachael*, in the spring of 1831, to go at large as a free woman, and petitioners are her children, then the jury ought not to presume that *Rachael* was legally manumitted in any period of time of such going at large, less than twenty years next before the commencement of this action, and must find for defendant.

12th. If *Aaron* was a slave in 1830, and so continued from the time *Rachael* went to live with him as his wife, and he purchased her from *Mrs. W.*, and if *Rachael* was not otherwise set free than by being permitted, under some understanding between *Mrs. W.* and *Aaron*, to live with him as his wife, and if *Rachael* did not go at large, except as the wife of *Aaron*, and twenty years have not elapsed from the time of said understanding, or of *Rachael's* going to live with *Aaron* thereunder, to the time when defendant claimed and took petitioners, then they ought not to presume a deed of manumission of *Rachael*, and ought to find for defendant.

13th. If *Rachael* was purchased by *Aaron*, and continued his slave until the death of *Mrs. W.*, so far as she could be

the slave of *Aaron*, that is, that she continued under his control, as such slave, until 1846, then petitioners are not entitled to a verdict.

The court granted the *second, third* and *eighth* prayers, and rejected all the others. Defendant excepted, and the verdict, and judgment being in favor of the petitioners, he appealed to this court.

The cause was argued before Dorsey, C. J., Spence, Martin and Frick, J.

Hobbs and Wm. Schley, for the appellants, contended:

1st. That the petitioners, from the scope of the evidence, could only be entitled to a verdict, *provided* it were found by the jury, that their mother, *Rachael*, was a free woman at the respective periods when the petitioners were born.

2nd. That inasmuch as it is a conceded fact that *Rachael* was the slave of *Mrs. Frances Warfield*, deceased, at a specified period, and as all the petitioners were born before the decease of *Mrs. Warfield*, it results that said *Rachael* remained a slave at the death of said *Mrs. Warfield*, unless she was legally manumitted by said *Mrs. Warfield*, in her lifetime.

3rd. Such manumission could only be validly made by a deed of manumission; which, (upon a concession of the condition of slavery of said *Rachael*, at a given period,) must have been made, if at all, after such period.

4th. Proof was indispensible of the execution of such deed. Such proof could only be, by actual production of said deed, or of a copy thereof duly certified; or by proof of *facts*, from which it would result *as a presumption of law*, that such deed was duly executed, acknowledged and recorded.

5th. The facts in this case are not such as to form a basis for such presumption of law.

6th. But if there are any facts, from which, *if taken alone*, such presumption might be deduced; yet upon the whole proof, if believed by the jury, such presumption should not have been made. The rule, " *stabitur presumptio donec probetur in contrarium*," applies to the case.

7th. The "going at large" of *Rachael,* having been shown to originate in an intended contract with negro *Jason,* the husband of *Rachael;* and it being a conceded fact that said *Jason* was, and is in law, a slave, such going at large formed no basis for a legal presumption, that *Rachael* was manumitted by a deed of manumission duly executed, acknowledged and recorded according to law.

8th. At all events, it is not the basis of a legal presumption, that such deed was so executed, acknowledged and recorded, at the very time the said *Rachael* first went at large, or before the petitioners were born.

Wm. H. G. Dorsey and Alexander, for the appellees, in answer to the first exception, insisted:

1st. That the verdict was *res inter alios acta,* and therefore, inadmissible, even for the purpose of discrediting *Alfred Warfield.* The verdict, whilst it stood, was only the conclusion of the jury from all the evidence given on the trial. It does not profess to have been founded on the testimony of *Alfred Warfield* in any degree, and affords no evidence whatever of what that testimony was.

In support of the first instruction granted in the second exception, they insisted:

2nd. That there was evidence from which the jury might presume that *Mrs. Warfield* had manumitted *Rachael* before the birth of the petitioners; and that to entitle them to a verdict, it was not necessary for the petitioners to produce a deed of manumission, executed, acknowledged and recorded agreeably to the act of 1796, ch. 67.

3rd. In support of the second instruction; that the petitioners are entitled to the benefit of the presumption arising from the actual enjoyment of freedom by their mother, down to the trial of the cause, and if such enjoyment of freedom continued for more than twenty years next before the trial, the petitioners were entitled to the verdict.

4th. That upon the hypothesis that *Rachael* enjoyed her freedom for more than twenty years before the trial, she must

have acted as a free woman for eighteen years before the filing of the petition in this cause, and such actual exercise of freedom, under the circumstances detailed in the second prayer of petitioners, would have entitled them to the verdict.

And in support of the rulings of the court in the third exception, they insisted.

5th. In relation to the defendant's first prayer:   That it assumes the obligation of the petitioners to prove their title by exhibiting a deed of manumission, which is inconsistent with the first instruction granted on the prayer of the petitioners; on any other hypothesis, this prayer is virtually granted by the granting of the defendant's third prayer.

6th. The defendant's fourth prayer involves the proposition, that to entitle the petitioners to the benefit of the agreement between *Mrs. Warfield* and *Rachael,* or her husband, it was necessary for them to prove that such agreement was fully carried out and executed by *Rachael* or *Aaron*, or some one for them.   It is insisted that such proof was not necessary.

7th. In answer to the defendant's fifth prayer, it will be insisted that the petitioners were under no obligation to show that *Aaron* did support his two children, born at the time of the agreement between *Mrs. Warfield* and himself.

8th. In answer to the defendant's sixth prayer, that the fact that *Aaron* was a slave whilst *Rachael* lived with him, will not deprive her, or her children, of the benefit of the presumption arising from her actual enjoyment of freedom under the circumstances.

9th. In answer to the defendant's seventh prayer, that upon the agreement as proved, *Rachael's* freedom was to commence at the moment of her going at large, and was not to be postponed to a future day.

10th. In answer to the defendant's ninth prayer, then it puts it to the jury to find a deed of manumission as a fact, and in absence of proof of a deed actually executed, denies the right of petitioners to a verdict.   This prayer could have been granted only on the hypothesis, that the first prayer offered by petitioners ought to have been rejected.

11th. In answer to the defendant's tenth prayer, that it rests upon the same hypothesis with the sixth, and is equally erroneous.

12th. In answer to the defendant's eleventh and twelfth prayers, that a going at large by *Rachael* for twenty years before the filing of the petition, was not essential to warrant a presumption in favor of the petitioners.

13th. In answer to the defendant's thirteenth prayer, that it involves a position which is inadmissible in law, to wit, the purchase of *Rachael* by a slave, and involves, substantially, the proposition in the sixth prayer, and is equally exceptionable.

By the court.

JUDGMENT AFFIRMED.